Case No. 20-3504

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

**JACQUELINE STEVENS,**

Plaintiff-Appellant,

v.

**UNITED STATES DEPARTMENT OF**

**STATE**

Defendant-Appellee.

Appeal from the United States District Court
Northern District of Illinois
case no. No. 17 cv 2494
Hon. Judge Lee

---

### APPELLANT'S OPENING BRIEF AND SHORT APPENDIX

---

LAW OFFICES OF LARRY R. GLAZER
Nicolette Glazer, Esq.
1999 Avenue of the Stars
Suite #1100
Century City, CA 90067
Tel: (310) 407-5353
Fax: (310) 407-5354

ATTORNEYS FOR APPELLANT

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**
Appellate Court No: 20-3504

Short Caption: **STEVENS vs. STATE DEPARTMENT**

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a nongovernmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

**Jaqueline Stevens**

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

**Andrew Free Esq.**
**Nicolette Glazer Esq.**
**Law Offices of Larry R. Glazer**

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

**N/A**

ii) ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

**N/A**

_____

Attorney's Signature: on file Date: **05/10/2021**

Attorney's Printed Name: **Nicolette Glazer Esq**.

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Cir. Rule 3(d). **XX Yes**

**___No**

Address: **1999 Avenue of the Stars #1100**

**Century City, CA 90067**

Phone Number: **310-407-5353** Fax Number: **310-407-5354**

E-Mail Address: **nicolette@glazerandglazer.com**

## TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ...........................................................................6

ISSUE PRESENTED FOR REVIEW ........................................................................6

STATEMENT OF THE CASE ..................................................................................6

SUMMARY OF THE ARGUMENT .........................................................................7

STANDARD OF REVIEW .......................................................................................8

ARGUMENT .............................................................................................................9

    A.    DOS failed to meet its burden to show that it conducted an adequate search. ........10

    B.    The expansive presumption of good faith and legitimacy accorded by the district court was improper. ...................................................................................13

    C.    Appellee failed to show that its withholdings were proper. ......................................18

CONCLUSION .........................................................................................................24

STATEMENT OF RELATED CASES ....................................................................25

CERTIFICATION OF COMPLIANCE WITH CIRCUIT RULE 32 .................25

CERTIFICATION OF COMPLIANCE WITH CIRCUIT RULE 30(D) ..........25

**TABLE OF AUTHORITIES**

**Cases**

*Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 143 (2d Cir. 2010) ........ 8

*Campbell v. D.O.J.*, 164 F.3d 20 (D.C. Cir. 1998) ............................................................. 18, 21

*CIA v. Sims*, 471 U.S. 159 (1985) ................................................................................................ 19

*City of Chicago v. A.T.F.*, 423 F.3d 777 (7th Cir. 2005) .......................................................... 8, 9

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980). ......................... 24

*Cunanan v. INS*, 856 F.2d 1373 (9th Cir.1988) ........................................................................... 1

*Dep't of the Air Force v. Rose*, 425 U.S. 352 (1976) ................................................................. 16

*E.P.A. v. Mink*, 410 U.S. 73 (1973) ........................................................................................... 24

*Eberg v. Dep't of Def.*, 193 F. Supp. 3d 95 (D. Conn. 2016) .................................................... 11

*El Badrawi v. DHS*, 583 F. Supp. 2d 285 (D. Conn. 2008) ....................................................... 12

*Elec. Frontier Found. v. DOJ*, 739 F.3d 1 (D.C. Cir. 2014). ..................................................... 23

*Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356 (2019) ............................................ 23

*Halpern v. FBI*, 181 F.3d 279  (2d Cir. 1999) ........................................................................... 21

*Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) ................................................................................... 15

*Hobbs v. Blackburn,* 752 F.2d 1079 (5th Cir. 1985) .................................................................. 15

*Holy Spirit Ass'n for Unification of World Christianity, Inc. v. Dep't of State*, 526 F. Supp. 1022
    (S.D.N.Y. 1981) ..................................................................................................................... 22

*Immigration Justice Clinic of the Benjamin N. Cardozo Sch. of Law v. Dep't of State*, No. 12 Civ.
    1874, 2012 WL 5177410 (S.D.N.Y. Oct. 18, 2012) .............................................................. 22

*In re Wade*, 969 F.2d 241 (7th Cir. 1992) ................................................................................ 8, 9

*John Doe Agency v. John Doe Corp.*, 493 U.S. 146  (1989) ....................................................... 16

*Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208 (D.C. Cir. 2013) ................................ 8, 9

*Medina-Hincapie v Dept. of State*, 700 F.2d 737 (D.C.Cir 1983) ............................................ 22

*Morley v. C.I.A.*, 508 F.3d 1108 (D.C. Cir. 2007) ..................................................................... 10

*Nat'l Council of La Raza*, 411 F.3d  341 (2d Cir. 2005) ............................................................ 24

*National Archives and Records Admin. v. Favish*, 541 U.S.157 (2004) ..................................... 13

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132  (1975) ............................................................... 23

*Oglesby v. U.S. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990). .................................................... 9

*Pacific States Box & Basket Co. v. White,* 296 U.S. 176 (1935). ............................................... 15

*Riggs Nat'l Corp. v. Comm'r,* 295 F.3d 16 (D.C. Cir. 2002) ..................................................... 15

*Rojas v. Fed. Aviation Admin.*, 927 F.3d 1046 (9th Cir. 2019) .................................................. 23

*SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197 (D.C. Cir. 1991). .............................................. 10

*Serv. Women's Action Network v. Dep't of Def.*, 888 F. Supp. 2d 231 (D. Conn. 2012) ............. 10

*Steinberg v. DOJ*, 23 F.3d 548 (D.C. Cir. 1994). ........................................................................ 9

*United States Department of State v. Ray*, 502 U.S. 164 (1991) ................................................. 13

*United States v Armstrong*, 517 U.S. 456 (1996). ...................................................................... 13

*United States v. Chemical Foundation*, 272 U.S. 1 (1926). ........................................................ 13

*Vietnam Veterans v. DHS*, 8 F. Supp. 3d 188, 221 (D. Conn. 2014)............................................11
*Voorhees v. Jackson,* 35 U.S. 449 (1836) ................................................................................15
*Wallick v. Agric. Mktg. Serv.*, 281 F. Supp. 3d 56 (D.D.C. 2017).............................................18
*Wilner v. NSA*, 592 F.3d 60 (2d Cir. 2009) ...............................................................................19

**Statutes**

5 U.S.C. § 552(b)(5)....................................................................................................................23
5 U.S.C. § 552(b)........................................................................................................................18
5 U.S.C. §552(a)(3)(A)............................................................................................................8, 9
5 U.S.C. §552(a)(4)(B)......................................................................................................6, 8, 9
5 U.S.C. §552(b)(1)....................................................................................................................19
8 U.S.C. § 1202(f).......................................................................................................................22

**Other Authorities**

1 JAMES T. O'REILLY, FEDERAL INFORMATION DISCLOSURE § 8:22, at 630 (Winter
   2018)........................................................................................................................................16
ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION
   OF LEGAL TEXTS 362 (2012)................................................................................................15
Christina E. Wells, "National Security" Information and the Freedom of Information Act, 56
   ADMIN. L. REV. 1195, 1208 (2004)....................................................................................16
Paul R. Verkuil, An Outcomes Analysis of Scope of Review Standards, 44 WM. & MARY L.
   REV. 679, 713 (2002)............................................................................................................17

## JURISDICTIONAL STATEMENT

The district court exercised subject-matter jurisdiction over this case pursuant to 5 U.S.C. §552(a)(4)(B) and 28 U.S.C. §1331. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291. This appeal is from a final order or judgment that disposes of all parties' claims, which the district court entered on 10 November 2020 (E.C.F. #86). Plaintiff-appellant filed a timely notice of appeal on 15 December 2020.

## ISSUE PRESENTED FOR REVIEW

*Whether the district court erred in entering summary judgment in favor of the United States Department of State.*

## STATEMENT OF THE CASE

Plaintiff-Appellant Jacqueline Stevens is a professor of political science at Northwestern University. (Short Appendix [Decision] at 13) One of Plaintiff's research projects has focused on the United States Department of State [hereinafter 'DOS'] 's relationship with the foreign campuses of American universities. *Id.* As part of that research, Stevens submitted three FOIA requests to the DOS:

• **Request 3180** demanded "[a]ll State H.Q. and consular Qatar materials in all system records and elsewhere referencing Northwestern University's Qatar campus" from 2005 to present, including "memorandums, cables or email, notes, reports, correspondence with other agencies, members of Congress (or staff) and private firms or individuals." Def. 's S.O.F. ¶ 5.

• **Request 3181** demanded "policy and planning materials" relating to "establishing U.S. university campuses in Qatar, Abu Dhabi, South Korea, China, and Singapore" from 2003 to the present. Def. 's S.O.F. ¶¶ 20–21.

• **Request 3575** demanded documents "sent to and from U.S.A.I.D." and documents "produced, received or maintained by the Middle East Partnership Initiative and its components," from 2004 to present, relating to: (1) "U.S. Government funds transferred to the Independent Center of Journalists"; (2) Northwestern University and its components, including the Medill School of Journalism; or (3) the Center of Journalism Excellence. (Separate Appendix (hereinafter 'S.A'). at 13, 36, 39, 44-45)

In response to Stevens's FOIA requests, DOS purportedly searched multiple filing systems and offices for responsive records. (S.A. at 46-64) Among other locations, DOS examined the State Archiving System, the Records Inventory Management System, Embassies and Consulates in Abu Dhabi, Beijing, Doha, Seoul, Singapore, and Shanghai, along with the Bureaus of Diplomatic Security ("D.S."), Near Eastern Affairs ("N.E.A."), East Asian and Pacific Affairs ("E.A.P.A."), and International Information Programs ("I.I.P."). (S.A. at 13-14; Def.'s S.O.F. ¶¶ 7, 22, 39). Appellee's affidavit submitted in support of the Motion for Summary Judgement listed some of the "keywords" used to search each of those locations. (S.A. at 58-74).

In response to Request 3180, DOS produced 128 records in full, 350 records in part, and withheld 22 other records. (Short Appendix at 14). As to Request 3575, DOS produced 29 records in full, two records in part, and withheld two other records in full. *Id.* As to Request 3181, DOS produced no records. *Id.*

In response to a prematurely filed motion for summary judgment, Appellant pointed to various deficiencies in DOS's searches and withholdings. (S.A. [Stevens Decl ¶¶11-13] at 177-78) Rather than reply, DOS disclosed that it had located a voluminous number of potentially responsive documents, over 10,000. (*Id.* at 53 [Stein Decl. ¶7], and at 180 [Stevens Decl. ¶20-21])  In light of the volume of the "newly" discovered responsive documents, Appellant attempted to focus the searches on identifying the most recent documents for production first. *Id.* When the dust settled, in response to the three FOIA requests, DOS produced only a handful of records with extensive redactions and withheld many documents in full.  (S.A. at 53-54 [Stein Decl. ¶¶8-9]).

DOS then filed a second motion for summary judgment *(*E.C.F. No. 57). The district court granted DOS's motion in summary judgment in part. (Short Apdx) After DOS completed the ordered additional search, the district court entered a final judgment. (S.A. at 11).

**SUMMARY OF THE ARGUMENT**

FOIA requires that government agencies make requested records available to any person unless one of nine narrow exemptions applies. 5 U.S.C. §552(a)(3)(A). The Act places the burden on the agency to demonstrate that the agency has conducted a good faith and reasonable search for the 'agency records' requested and to justify any withholding or redaction in the production. *Judicial Watch, Inc. v. U.S. Secret Serv*., 726 F.3d 208, 220 (D.C. Cir. 2013) Thus, FOIA requires government agencies like Appellee to disclose information and records upon request and without requesting justification or need for the records. While government agencies are still permitted to withhold from disclosure certain information that falls within one of FOIA's nine exemptions, these exemptions are to be narrowly construed to promote the statute's broad disclosure policy. *In re Wade*, 969 F.2d 241, 246 (7th Cir. 1992) Furthermore, federal courts may review an agency's denial of a FOIA request to determine whether the agency properly withheld the information, 5 U.S.C. §552(a)(4)(B), not blindly afford deference to the agency reasoning, *City of Chicago v. A.T.F.*, 423 F.3d 777 (7th Cir. 2005). To justify summary judgment, Appellee had the burden to make two showings: (1) that its search was adequate and (2) that any withheld documents fall within an exemption to FOIA. DOS failed to carry its burden on either issue and the district court applied an exceedingly deferential standard of review, in essence shifting the burden on the requester in clear violation of the statutory mandate. Summary judgment, therefore, should have been denied.

**STANDARD OF REVIEW**

This Court reviews de novo a district court's grant of summary judgment in a FOIA action. *Becker v. I.R.S.*, 34 F.3d 398, 405 (7th Cir. 1994). An agency's decision that information is exempt from disclosure receives no deference, and all doubts must be resolved in favor of disclosure. *Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 143, 147 (2d Cir. 2010). To prevail on summary judgment in a FOIA case, the agency must show that there is no genuine issue of material fact about the adequacy of its records search. *Becker*, 34 F.3d at 405; *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994). To demonstrate that its search was

adequate, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). An agency, thus, must always provide a reasonably detailed explanation for why the material was withheld: "Absent a sufficiently specific explanation from an agency, a court's de novo review is not possible and the adversary process envisioned in FOIA litigation cannot function." *Halpern*, 181 F.3d at 295.

## ARGUMENT

FOIA requires that government agencies make requested records available "to any person" unless one of nine narrow exemptions applies. 5 U.S.C. §552(a)(3)(A). The Act gives district courts authority to issue injunctive relief "to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B). The Act places the "burden [] on the agency to demonstrate, not [on] the requestor to disprove, that materials sought are not 'agency records'" and subject to disclosure. *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 220 (D.C. Cir. 2013) (citing *Tax Analysts*, 492 U.S. at 142 n.3). Under the Act, public access to information is premised upon the fundamental principle that the American people have a "right to know" not on their "need to know." Thus, FOIA requires government agencies like Appellee to disclose information and records upon request and without requesting justification or need for the records. While government agencies are still permitted to withhold from disclosure certain information that falls within one of FOIA's nine exemptions, these exemptions are to be narrowly construed to promote the statute's broad disclosure policy. *In re Wade*, 969 F.2d 241, 246 (7th Cir. 1992) Furthermore, federal courts may review an agency's denial of a FOIA request to determine whether the information was improperly withheld, 5 U.S.C. §552(a)(4)(B), not blindly afford deference to the agency reasoning, *City of Chicago v. A.T.F.*, 423 F.3d 777 (7th Cir. 2005).

To justify summary judgment, Appellee had the burden to make two showings: (1) that its search was adequate and (2) that any withheld documents fall within an exemption to FOIA *Carney*, 19 F.3d at 812. DOS failed to carry its burden on either issue. Summary judgment, therefore, should have been denied.

**A.     DOS failed to meet its burden to show that it conducted an adequate search.**

An adequate FOIA search is one "reasonably calculated to discover the requested documents." *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). Before a summary judgment can be entered, "the defending agency must show beyond material doubt that it has conducted" such a search. *Morley v. C.I.A.*, 508 F.3d 1108, 1114 (D.C. Cir. 2007). Rather than make this required showing, the district court allowed Appellee to rely on a combination of threadbare descriptions, conclusory statements, and irrelevant deflections. The record discloses that Appellee failed to uncover and produce numerous responsive documents in its possession. At a minimum, material disputes of fact regarding the reasonableness of Appellee's searches precluded summary judgment.

*First*, DOS has not described its databases and search methods in reasonable detail. (S.A. at 51-116) When an agency relies on sworn declarations to establish the adequacy of its search, those declarations "must be 'relatively detailed and non-conclusory.'" *Serv. Women's Action Network v. Dep't of Def.*, 888 F. Supp. 2d 231, 240-41 (D. Conn. 2012) (quoting *SafeCard*, 926 F.2d at 1200). The agency's declarations "must detail files searched and the general scheme of the agency file system," *id.* at 245, and they must "describe in reasonable detail the scope of the search and the search terms or methods employed," *id.* at 241. DOS's declaration in this case is insufficient to support summary judgment because it fails to describe the agency's general file system and fails to provide remotely reasonable detail about the scope and methods of Appellee's searches. DOS's failure to describe its recordkeeping scheme and the specific databases in which information is stored made it impossible to determine whether DOS searched the specific databases within each component likely to contain all responsive records. (S.A. at 51-116) For

example, Mr. Stein explained in his declaration that "each embassy and consulate has unique staffing patterns and records management systems", (S.A. at 58-59 ¶20), but failed to describe the records management systems at the U.S. Embassy in Doha and the other consulates. (*Id.* at ¶21-22). Instead, the Stein declaration discloses that the individuals tasked with conducting the search only searched some classified and unclassified records. *Id.* Next, for the Bureau of Diplomatic Security, Mr. Stein failed to provide any information of the component's records management system but asserted that an unidentified policy analyst in DS/TIA searched the classified and unclassified "network shared drives." ( *Id.* at 60-61 ¶26) The Special Adviser responsible for Qatari affairs with the NEA "conducted searches of his [own] unclassified and classified email records and the NEA/ARP network shared drive". (*Id.* at 61 ¶28). The same conclusory assertion of search in a "network shared drive" and/or "emails" permeated the rest of the declaration. (S.A. at 62(¶32); 63(¶35); 68-73(¶46-55). This passing reference to 'personal files', 'shared drives', and 'emails' does not, however, fulfill DOS's obligation *to explain* what databases it maintains, how it selected the ones that were searched in response to Appellee's requests, and what type of documents the searched databases contain. Several out-of-circuit district courts have rejected as insufficiently detailed agency declarations that tracked the Stein declaration regarding the searched databases. In *Vietnam Veterans* the court determined that a FOIA officer's declaration was inadequate because she "state[d] that computer hard drives, shared drives, and email accounts were searched," but did not explain "whether there are other electronic files which were not searched, and if there are, why they were not searched." *Vietnam Veterans v. DHS*, 8 F. Supp. 3d 188, 221 (D. Conn. 2014); *Eberg v. Dep't of Def.*, 193 F. Supp. 3d 95, 109 (D. Conn. 2016) (agency declaration was inadequate where declarant stated that he "searched electronic databases with Share Drives on the Non-secure Internet Protocol Router Network (NIPRNET) allocated to" his office but failed to "explain how his office's files are organized into the NIPRNET, identify the names or number of databases he searched, or describe the types of files kept in or fields used by the databases he searched."). The *El Badrawi* court explained that a FOIA declarant must "attempt to describe the general scheme of [an agency's]

11

file system" and provide "for example, a list of databases to which [the agency] has access and a delineation of what types of records each database contains." *El Badrawi v. DHS*, 583 F. Supp. 2d 285, 300 (D. Conn. 2008) ("The lack of such disclosure stymies El Badrawi's ability to advocate his position and does not meet the 'relatively detailed and nonconclusory' standard adopted by the Second Circuit."). This Court should adopt this approach to promote and accomplish the Act's remedial nature and the Congressional mandate of broad disclosures. Here, Appellee's failure to describe its recordkeeping scheme made it impossible to determine whether DOS searched all databases likely to contain responsive records. *Campbell*, 164 F.3d at 28 (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)) ("[A]n agency 'cannot limit its search to only one record system if there are others that are likely to turn up the information requested.'").

Before the district court Appellant asserted that the following locations/files were likely to contain responsive documents but were not searched: (1) records of Embassy officials, other than Dana Smith, U.S. Ambassador to Qatar, 2014-2017, such as prior and subsequent ambassadors, cultural & commercial attaches, etc., (2) Ambassador Smith's official email and other official and paper records before 2015; (3) the Bureau of Political-Military Affairs; (4) paper files of the consular office within each Embassy; (5) the Secret Level network (ClassNet); (6) the classified e-mails; and (7) the emails and records of the Foreign National Employees of the Embassies who are most likely to have been the first-line liaisons with local officials, entities, and firms about education and foreign campuses. (S.A. at 184-89 [Stevens Decl] ¶¶30-35) Rather than require DOS to provide a detailed summary of the agency's file retention system, the district court struck Appellee's declaration for "lack of personal knowledge". (S.A. at 13-14 (fn3). Because Appellee failed to discharge its statutory burden of proof, DOS must be compelled to separately search through the Embassy's employees' individual emails and electronic and paper records because it had not searched them (and does not assert that it maintains) any all-encompassing database that would have contained all such records and emails. DOS should be ordered to perform a proper search, including but not limited to, (1) a search of

prior ambassadors' emails, (2) the emails of other Embassy officials/employees, and (3) the Embassy's paper records.

B.     **The expansive presumption of good faith and legitimacy accorded by the district court was improper.**

The presumption of regularity invoked in FOIA cases like the one at bar and applied by the district court is misplaced and not supported by the clear and unambiguous text of the Act.

*First*, in its decision, the district court conflated the requirement that an agency conduct a search in "good faith" with a presumption of good faith accorded agency action in performing such a search. (S.A. at 16-17)

*Second*, the district court misapplied the presumption of regularity, even if such a presumption has a place in FOIA cases. The presumption of regularity was first applied by the Supreme Court to acts of public officials in *United States v. Chemical Foundation*, 272 U.S. 1, 47 (1926). In addressing the acts of a "counselor for the Department of State, appointed by the President and confirmed by the Senate" the Supreme Court announced that "[t]he presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Id.* The presumption was later applied in both FOIA cases and in selective prosecution cases seeking to obtain disclosure of information pointing to negligent or discriminatory acts by agencies without much analysis. *See generally, United States Department of State v. Ray*, 502 U.S. 164, 178-79 (1991); *United States v Armstrong*, 517 U.S. 456, 464 (1996). In *National Archives and Records Admin. v. Favish*, 541 U.S.157 (2004) the Court dispelled the trend. The High Court observed that the presumption of "legitimacy" accorded to Government's official conduct" perhaps is less a rule of evidence than a general working principle." *Id*. In *Favish*, thus, the Supreme Court rejected the "clear evidence to the contrary standard" and held that in a FOIA case a less stringent standard applies to rebut any "presumption of legitimacy" working principle:

Given FOIA's prodisclosure purpose, however, the less stringent standard we adopt today is more faithful to the statutory scheme. Only when the FOIA requester has produced evidence sufficient to satisfy this standard will there exist a counterweight on the FOIA scale for the court to balance against the cognizable privacy interests in the requested records. Allegations of government misconduct are " 'easy to allege and hard to disprove,' " *Crawford-El* v. *Britton*, 523 U. S. 574, 585 (1998), so courts must insist on a meaningful evidentiary showing. It would be quite extraordinary to say we must ignore the fact that five different inquiries into the Foster matter reached the same conclusion. As we have noted, the balancing exercise in some other case might require us to make a somewhat more precise determination regarding the significance of the public interest and the historical importance of the events in question. We might need to consider the nexus required between the requested documents and the purported public interest served by disclosure. We need not do so here, however. Favish has not produced any evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred to put the balance into play.

*Third*, the district court appeared to have extended the 'working principle' affording a presumption of legitimacy to the official action of a high-ranking public official to *all* individuals performing *any act* under the authority of a public employee like Mr. Stein or a government agency. (S.A. 16-17, 20-21 [search], 24-29 [exemptions]) If taken to its logical conclusion the district court's reasoning would cloth with a "presumption of regularity" and good faith the act of any government official who participated in a FOIA search, presuming that each did their jobs thoroughly; that each employee in the chain relied on the work of someone down the chain in whom he had confidence; and the work of everyone measured to a standard of acceptable performance. No case cited by the Government or the district court extends the 'working principle' affording a presumption of legitimacy to the official action of a high-ranking public official to all individuals performing any act under the authority of a public employee providing a self-serving declaration in pending litigation. No case cited by the district court imagines a world in which every person employed, associated, hired, or commissioned to provide information to a FOIA official in preparation of a Vaughn index is presumed to have done their jobs fairly, conscientiously, and thoroughly. On the few occasions when it has addressed the issue the Supreme Court has rejected far less ambitious attempts to expand the presumption of regularity. In *Citizens To Preserve Overton Park, Inc v. Volpe*, after affirming that "the

Secretary's decision is entitled to a presumption of regularity," the Court clarified that the presumption does not "shield his action from a thorough, probing, in-depth review." *Citizens To Preserve Overton Park, Inc v. Volpe*, 401 U.S. 402 (1971), abrogated on other grounds in *Califano v. Sanders,* 430 U.S. 99 (1977). In *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) the Supreme Court, in addressing the process due to citizens held as enemy-combatants, observed: "Any process in which the Executive's factual assertions go wholly unchallenged or are simply presumed correct without any opportunity for the alleged combatant to demonstrate otherwise falls constitutionally short. *Id.* at 536-37. The presumption of regularity is typically applied in limited circumstances: the challenged document usually emerges from a process that can safely be relied upon to produce accurate information because it is transparent, accessible, and familiar to the affected parties. Courts assume that official tax receipts are properly produced, *Riggs Nat'l Corp. v. Comm'r,* 295 F.3d 16, 21 (D.C. Cir. 2002); that state court dockets accurately reflect the proceedings they describe, *Hobbs v. Blackburn,* 752 F.2d 1079, 1081 (5th Cir. 1985); that mail was duly handled and delivered, *Legille v. Dann,* 544 F.2d 1, 7 n.39 (D.C. Cir. 1976); and that agency actions *in the ordinary course of business* are undertaken on the basis of fact, *Pacific States Box & Basket Co. v. White,* 296 U.S. 176, 185 (1935). In such circumstances courts have little reason to question the output of such processes absent specific evidence of error. But here the district court went beyond this 'working principle' and appears to have applied the presumption of regularity afforded to court judgments to the action of DOS in its entirety. *Cf. Voorhees v. Jackson,* 35 U.S. 449, 472 (1836) ("There is no principle of law better settled than that every act of a court of competent jurisdiction shall be presumed to have been rightly done till the contrary appears".)

*Fourth*, by accepting government assertions at face value while requiring Appellant to produce specific evidence is also in sharp tension with FOIA's general presumption in favor of disclosure and the Government's allocated burden of proof. FOIA instructs courts how to approach ambiguity: in favor of disclosure. ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 362 (2012) (concluding that

FOIA is one of the "rare[]" statutes for which a narrow construction of exceptions is justified), *Dep't of the Air Force v. Rose*, 425 U.S. 352, 366 (1976) ("FOIA requires us to choose that interpretation most favoring disclosure."); *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 164 (1989) (Scalia, J., dissenting) ("[O]ur doctrine of 'narrowly construing' FOIA exemptions requires . . . ambiguity to be resolved in favor of disclosure."). Yet, the presumption in favor of disclosure was absorbed below by an expansive presumption of good faith in government acgtion.

    *Fifth*, as applied by the district court in this case, a presumption of "good faith" and/or differential review of a self-serving declaration of a single FOIA official far removed from the actual search process eviscerates the "de novo" review imposed by the Act itself. 1 JAMES T. O'REILLY, FEDERAL INFORMATION DISCLOSURE § 8:22, at 630 (Winter 2018) ("Deference to the findings of an expert agency has a part to play in virtually all administrative law controversies, except a FOIA case."). As demonstrated by this case, despite a statutory mandate for *de novo* review, §552(a)(4)(B), the district court embraced an impermissible deference regime which in essence shields all assertions agencies make to justify their search and the invocation of exemptions from any review and denies the requester any means by which to challenge such assertions. Here a single affidavit from a high-ranking agency employee was the only evidence presented at the summary judgment level. Yet, Mr. Stein did not perform any of the searches and the Government presented no indices or taskers to show what each of the persons purporting to have effected the search actually did. The deference accorded by the district court to Mr. Stein was dispositive and in essence, abrogated FOIA's command for *de novo* review. Christina E. Wells, "National Security" Information and the Freedom of Information Act, 56 ADMIN. L. REV. 1195, 1208 (2004) ("Although purporting to apply de novo review, [courts] effectively apply something less."). Applying blanket deference, as the district court did below, prevented weighing evidence and assessing credibility. Mr. Stein assertions were afforded preclusive effect; Prof. Stevens's own professional opinions and assertions of fact were disregarded. Because the Stein declaration was the only factual evidence

presented for the agency to receive summary judgment, deferring to the affidavit as the district court did in this case is tantamount to deferring to the agency itself. Such an approach is particularly troublesome in FOIA cases where often courts "almost instinctively" side with the Government, Paul R. Verkuil, An Outcomes Analysis of Scope of Review Standards, 44 WM. & MARY L. REV. 679, 713 (2002),  and requesters have no means or ability to challenge the assertions made. Although FOIA imposes a presumption in favor of disclosure and places the burden of proof on the Government, while acknowledging both requirements, the district court's review effectively shifted the burden to Appellant.

### 1.  The District Court Misconstrued the Purpose of the Keyword Search Agreement in case No. F-2015-03180

Citing to the affidavit of Mr. Stein, Defendant asserted that for F-2015-03180, "[t]he parties agreed that the Department could reduce the number of documents needed to be processed." (S.A. at 39 [Stein Decl ¶18], citing Ex. A., ¶¶ 1, 7). The district court agreed. *First*, Prof. Stevens vehemently disputes the characterization: she explained that the exchange with Defendant's counsel was solely for the purpose of assisting DOS in focusing the searches and prioritizing the production of the most recent documents, a goal born out of her need to complete her scheduled publications. (S.A. at 178-81 [Stevens Decl. ¶¶20-28)  *Second*, even if the exchange of emails could be construed as an agreement to narrow the search, which it was not, the Stein declaration shows that DOS failed to abide by the agreement. Footnote 1 to the Stein Declaration lists the purportedly agreed-upon keywords, yet in describing the searches *actually* performed Mr. Stein nowhere affirmed that an additional search using these keywords was performed. Rather, in footnote 4 Mr. Stein alluded that the Department applied some unidentified "additional keywords" to narrow the search. (S.A. at 57 [Stein Decl] at p. 7¶16, FN4]). Paragraphs 18 through 35 of Mr. Stein's declaration, however, show that databases were searched for only limited terms: none of the purportedly agreed upon keywords were used. (S.A. at 58-63) *Third*, although Appellant had requested the use of wildcards "censor*" in the

additional searches, none appear to have been used. (Stein Decl ¶¶7-9, 13-36) The district court disagreed, accepting Mr. Stein conclusory and vague assertions as conclusive. The district court went even further and held that Appellant violated the agreement, (S.A. at 20), or waived any argument on the issue by waiting too long, (S.A. at 20-21). Again, the court disregarded the burden of proof imposed by the Act and deferred to the government on a purely factual issue that required an assessment of the credibility of the competing assertions regarding the scope of the agreement.

### 2. Defendant failed to conduct a good faith search.

Once DOS realized that its original search failed to capture over 10,000 responsive documents, DOS had "a duty to follow-up on any known leads," which would include conducting additional searches based on the details of the additional keywords, events and meetings Prof. Stevens had flagged. (S.A. at 184-93 [Stevens Decl.] ¶¶30-37); *Campbell v. D.O.J.*, 164 F.3d 20, 28 (D.C. Cir. 1998) ("An agency has discretion to conduct a standard search in response to a general request, but it must revise its assessment of what is 'reasonable' in a particular case to account for leads that emerge during its inquiry."); *Wallick v. Agric. Mktg. Serv.*, 281 F. Supp. 3d 56, 73 (D.D.C. 2017). Mr. Stein's declaration reflects that DOS did not do so.

### C.    Appellee failed to show that its withholdings were proper.

An agency may only withhold records responsive to a FOIA request if the withheld information is exempt under FOIA. 5 U.S.C. § 552(b). To justifiably withholding of responsive records, an agency must provide "reasonably detailed explanations why any withheld documents fall within an exemption." *Carney* , 19 F.3d at 812.

### 1. Exemption 1

Exemption 1 protects national security information, and specifically exempts from disclosure records that are: "(A) specifically authorized under criteria established by an

Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. §552(b)(1). The records withheld under Exemption 1 in this case are classified under section 1.4 of Executive Order 13,526, which protects, among other things, "foreign government information," "intelligence activities [and] intelligence sources or methods," and "foreign relations or foreign activities of the United States, including confidential sources." *See* 75 Fed. Reg. 707, 709 (Dec. 29, 2009); (Stein Decl. ¶¶61-64). *First*, the language of Executive Order 13,526 is circular, vague, unduly broad, and in contravention of FOIA's language and stated purpose. The Order does not include working definitions that provide useful criteria or measures for a Court to assess the "propriety" of the classifications as section 552(b)(1) requires. Government agencies may not merely rely on a need for a generalized heightened national security to justify the erosion of statutory entitlements to information. The Court must hold agencies invocation of Exemption 1 to FOIA's requirements. *Second*, there are no identifiable criteria that connect certain types of records to "national defense" and/or "foreign policy". This is of particular importance where as here the request for information is not about intelligence and law enforcement records, but for records related to the establishment, planning, or financing of campuses of private U.S. universities in foreign countries and journalistic studies. *Third*, the vagueness of the Order coupled with generally permissive requirements regarding specificity in supporting affidavits that fail to explain why the contents of certain records cannot be disclosed leads to abdication of the role of the Judiciary to ensure that Congress's commands in FOIA are followed in purported "national security" cases. *CIA v. Sims*, 471 U.S. 159, 179 (1985) (noting that decisions of CIA director are given deference because of high stakes national security); *Wilner v. NSA*, 592 F.3d 60, 76 (2d Cir. 2009) (noting that courts should be deferential to executive predominance in FOIA cases involving national security). *Fourth*, the vague and unduly broad language used in the Order encourages and results in boilerplate assertions without any meaningful information to connect the nature or the unique character of the information withheld with "national defense" or "foreign

policy" or to explain how the release of the records could reasonably be expected to cause serious damage to the national security. Here, the *Vaughn* index uses the exact same vague and boilerplate language to justify every one of the Exemption 1 withholdings. (S.A. at 86-116) The district court applied a deferential standard requiring solely that the explanation "appear logical or plausible" but divorced the standard from the type of documents to exemption was applied.

> **Document # 27**: The withheld record is a 4-page cable from 2013 "regarding the effects of education in Qatar." Defendant has withheld the information in this document alleging that it "concerns both confidential sources and sensitive aspects of U.S. foreign relations, including discussions of sensitive national security topics involving U.S. interests in the Middle East. Confidentiality of this information is vital to the conduct of successful foreign relations." (S.A. at 91-92)

Yet, DOS has failed to connect the withheld information with either "national defense" or an articulable "foreign policy" as required by section 552(b)(1). Of note: the U.S. Government does not run, sponsor, or supervise university campuses in foreign lands. "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Larson*, 565 F.3d at 862 (quoting *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007)). None has been presented for Document #27.

> **Document #28**: The withheld record is a 2-page cable from 2007 "reporting on discussions between the U.S. Ambassador to Qatar and a Qatari Government official." DOS asserts that the document was originally and continues to be classified as CONFIDENTIAL. The original declassification date for this document was January 17, 2017. On May 9, 2018, during the pendency of this litigation, DOS classified this document as CONFIDENTIAL. Defendant withheld this document based on a conclusory and vague claim that it pertains "to foreign government information and foreign relations or foreign activities of the United States, including confidential sources." (S.A. at 92)

Yet, nowhere does Mr. Stein assert that the information exchanged between the US and Qatari officials was provided "in confidence" as required by Section 6.1(s) of E.O. 13526. It is utterly implausible that either the US Ambassador or a Qatari Government official would be considered

a "confidential source". The classifications are particularly suspect due to the boilerplate language used and the fact that Defendants reclassified during the pendency of this litigation four documents originally marked as UNCLASSIFIED and extended the SECRET or CONFIDENTIAL designation for information in two documents that was previously so classified but had passed its declassification date. (Stein Decl ¶66).

> **Document #34**: A 2013 Cable with the subject line "Qatar: Ousted Media Freedom Advocate Questions Qatari Commitment to Reform." Defendant has withheld this document alleging that it "pertains to foreign relations or foreign activities of the United States, including confidential sources." (S.A. at 97-98)

 Yet, it is apparent that the document pertains to generally publicized information by a Media Freedom "advocate" rather than a government official or a confidential source.

> **Documents 29, 30, 32, 33,34, 35, 36, 38**: Each of the withheld documents is a cable regarding visits by Government officials and U.S. representatives to Qatar.

Defendant used the same boilerplate language to describe an amorphous need to protect "foreign government information and foreign relations or foreign activities of the United States" in stale routine documents that do not warrant Exemption 1 protection. (S.A. at 93-101); *Halpern v. FBI*, 181 F.3d 279, 293 (2d Cir. 1999) (declaring that agency's "explanations read more like a policy justification" for Executive Order 12,356, that the "affidavit gives no contextual description," and that it fails to "fulfill the functional purposes addressed in Vaughn"); *Campbell v. DOJ*, 164 F.3d 20, 31, 37 (D.C. Cir. 1998) (remanding to district court to allow the FBI to "further justify" its Exemption 1 claim because its declaration failed to "draw any connection between the documents at issue and the general standards that govern the national security exemption"), on remand, 193 F. Supp. 2d 29, 37 (D.D.C. 2001) (finding declaration insufficient where it merely concluded, without further elaboration, that "disclosure of [intelligence information] . . . could reasonably be expected to cause serious damage to the national security"). The district simply deferred to the agency's conclusory assertions.

**2.**  Exemption 3 was improperly invoked.

DOS invoked Exemption 3 in relation to 8 USC § 1202(f), which limits disclosure of Department of State and diplomatic and consular records "pertaining to the issuance or refusal of visas or permits to enter the United States." 8 U.S.C. § 1202(f) The documents or portions of documents withheld consist of emails and a letter from the Dean of Northwestern in Qatar to an U.S. Embassy official (S.A. at 112-13 [Doc #61-63]). Courts have interpreted section 1202(f) as both non-discretionary, because it states that certain records "shall be considered confidential," and discretionary, because the phrase "pertaining to the issuance or refusal of visas" is one that "refers to particular types of matters to be withheld." *Holy Spirit Ass'n for Unification of World Christianity, Inc. v. Dep't of State*, 526 F. Supp. 1022, 1031 (S.D.N.Y. 1981) (holding that INA § 222(f) is a nondiscretionary exempt statute); *DeLaurentiis v. Haig*, 686 F.2d 192, 193 (3d Cir. 1982) (holding that INA § 222(f) "falls squarely" under the discretionary provision); *Medina-Hincapie v Dept. of State*, 700 F.2d 737, 741-42 (D.C.Cir 1983) (holding that INA § 222(f) is an exempt statute under both provisions). Here DOS is not withholding a visa application, notes within the consular database/processing system, or a determination by a consular officer but emails/letter from a non-applicant seeking to either predetermine decision-making action vested solely in a consular officer or influence an Embassy official. Mr. Stein does not state that a visa application was pending at the time of the communications or that visa application had been submitted in the past and denied. The Government bears the burden to show that the records withheld actually pertain to any *past* or *pending* request for a visa made *by any applicant*, as section 1202(f) has been limited to such visas. *Immigration Justice Clinic of the Benjamin N. Cardozo Sch. of Law v. Dep't of State*, No. 12 Civ. 1874, 2012 WL 5177410, at *1-2 (S.D.N.Y. Oct. 18, 2012) (distinguishing visa records from other records within the consular database).

**3.**  Exemption 5 was improperly invoked.

Exemption 5 applies to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Not all agency records, however, are memorandums or letters. Consideration of the scope of Exemption 5 starts with its text. *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2362 (2019). In contrast to Exemption 5, other FOIA exemptions do apply more broadly to "records or information," 5 U.S.C. §552(b)(7), or to "information and data," id. §552(b)(9). If Congress intended any agency record or information to be eligible for potential withholding under Exemption 5, it clearly knew how to so specify. *Rojas v. Fed. Aviation Admin.*, 927 F.3d 1046, 1055 (9th Cir. 2019) ("[I]f Congress intended Exemption 5 to extend to all 'agency records,' it would have used that term, 5 U.S.C. §552(f)(1), (2), rather than the narrower 'inter-agency or intra-agency memorandums or letters,' §552(b)(5)."). In addition, the Supreme Court has interpreted this provision to "exempt those documents, and only those documents that are normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). DOS invokes the deliberative process privilege for the following documents (1) emails (Documents 20-26, 39 -40, 41, 43, 49, 50, 53, 54, 63) and (2) cables regarding official visits to Qatar of agency heads, members of Congress, and the First Lady. (Docs 29-30, 35, 45-46, 67-68). (S.A. 90-116) These materials are, by their nature, not deliberative. In fact, DOS "cables" are the agency's mandatory directive to the field and constitute final agency action and statements of official policies and rules.

The deliberative process privilege protects records that are **both** predecisional and deliberative. *Elec. Frontier Found. v. DOJ*, 739 F.3d 1, 7 (D.C. Cir. 2014). A document is predecisional if it is "generated before the adoption of an agency policy." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006). Here, none of the documents were pre-decisional as they do not pertain to the formation or adoption of an official agency policy and do not pertain to any agency adjudication. Rather, the documents are routine communications regarding the coordination of official visits. A document is deliberative if "it reflects the give-and-take of the consultative process. The exemption thus covers recommendations, draft documents, proposals,

suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" on policy matters. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980). Here, the challenged documents appear to be ordinary intra-agency correspondence divorced from any deliberative process tending to the agency's policy-making or adjudicative functions. To the extent that any document withheld is a communication *after* an announcement has been made that a Government official/representative would make an official visit, those records would not be considered pre-decisional. *Nat'l Council of La Raza*, 411 F.3d at 356-57 (2d Cir. 2005).

Similarly, when documents contain information subject to Exemption 5, the agency must segregate out and release any portions of those documents that consist of "purely factual material . . . in a form that is severable without compromising the private remainder of the documents." *E.P.A. v. Mink*, 410 U.S. 73, 91 (1973) superseded in part on other grounds by 1974 amendments to FOIA. Even if DOS had adequately identified these documents and established that they contain material subject to Exemption 5, that would not end the matter, because Appellee has not shown that these documents contained no non-exempt factual material that could have been segregated and released. *Mink*, 410 U.S. at 91. Thus, there is a genuine dispute as to whether DOS is using Exemption 5 to withhold entire documents that should be fully or partially released. Additionally, some of the partial withholdings that Defendant does list in the Vaughn index lack sufficiently detailed explanations to establish that these withholdings are proper.

## CONCLUSION

For the reasons stated above the Court should reverse the decision of the district court and remand for additional searches.

Respectfully submitted,

*s/Nicolette Glazer*
LAW OFFICES OF LARRY R. GLAZER
Nicolette Glazer, Esq.
1999 Avenue of the Stars

Suite #1100
Century City, CA 90067
Tel: (310) 407-5353
Fax: (310) 407-5354

ATTORNEYS FOR APPELLANT


## STATEMENT OF RELATED CASES

The undersigned is not aware of other cases that raise similar legal issues as the appeal at bar.

LAW OFFICES OF LARRY R. GLAZER
_____ *s/ Nicolette Glazer* _____

Nicolette Glazer Esq.


## CERTIFICATION OF COMPLIANCE WITH CIRCUIT RULE 32

The undersigned attorney certifies that this brief is within the page limitations and contains 7973 words.

LAW OFFICES OF LARRY R. GLAZER
_____ *s/ Nicolette Glazer* _____
Nicolette Glazer Esq.


## CERTIFICATION OF COMPLIANCE WITH CIRCUIT RULE 30(D)

The undersigned attorney certifies that all materials required by part (a) are included in the Short Appendix attached to this brief and all materials required by part (b) are included in the separately bound Separate Appendix.

LAW OFFICES OF LARRY R. GLAZER
_____ *s/ Nicolette Glazer* _____
Nicolette Glazer Esq.

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 25th day of May 2021 a copy of this re-submitted brief was submitted for filing and distribution via the ECF system to all recipients entitled to notice.

LAW OFFICES OF LARRY R. GLAZER

_____ *s/ Nicolette Glazer* _____

Nicolette Glazer Esq.

# SHORT APPENDIX

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6.3.3
### Eastern Division

Jacqueline Stevens

Plaintiff,

v.                                                    Case No.: 1:17–cv–02494

Honorable John Z. Lee

United States Department of State

Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, November 9, 2020:

MINUTE entry before the Honorable John Z. Lee: The Court has reviewed the status report. On 3/23/20, the Court granted Defendant's motion for summary judgment in part and denied it in part. The parties inform the Court in the status report that the remaining issues have been resolved and request that the Court enter judgment in accordance with the order. Accordingly, judgment is entered in favor of Defendant and against Plaintiff for the reasons stated in the Court's order of 3/23/20. [70] Civil case terminated. Mailed notice(ca, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 17 C 2494 |
| | ) | |
| UNITED STATES DEPARTMENT | ) | Judge John Z. Lee |
| OF STATE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Professor Jacqueline Stevens has sued the United States Department of State ("Department"), alleging that it failed to conduct a reasonable search and withheld certain records it did find in violation of the Freedom of Information Act ("FOIA"). *See* 5 U.S.C. § 552. The Department has moved for summary judgment. Because the Department has established that it properly invoked the statutory exemptions outlined in FOIA, the Court grants summary judgment in its favor as to that issue. Furthermore, with the exception of two of the Department's subdivisions, the Court finds that the searches conducted by the Department satisfied statutory requirements. As to the remaining two subdivisions, the Court has concerns regarding the adequacy of their search, and the Department is directed to perform a supplemental search to remedy that shortcoming.

## Background[1]

Jacqueline Stevens is a professor of political science at Northwestern University.  Def.'s L.R. 56.1 Stmt. Material Facts ("Def.'s SOF") ¶ 3, ECF No. 59. One of Stevens's research projects focuses on the State Department's relationship with the foreign campuses of American universities.  Pl.'s L.R. 56.1 Stmt. Material Facts ("Pl.'s SOF") ¶¶ 9–12, ECF No. 65.  As part of that research, Stevens submitted three FOIA requests to the Department:[2]

- **Request 3180** demanded "[a]ll State HQ and consular Qatar materials in all system records and elsewhere referencing Northwestern University's Qatar campus" from 2005 to present, including "memorandums, cables or email, notes, reports, correspondence with other agencies, members of Congress (or staff) and private firms or individuals."  Def.'s SOF ¶ 5.

- **Request 3181** demanded "policy and planning materials" relating to "establishing U.S. university campuses in Qatar, Abu Dhabi, South Korea, China, and Singapore" from 2003 to present.  Def.'s SOF ¶¶ 20–21.

- **Request 3575** demanded documents "sent to and from USAID" and documents "produced, received or maintained by the Middle East Partnership Initiative and its components," from 2004 to present, relating to: (1) "U.S. Government funds transferred to the Independent Center of Journalists"; (2) Northwestern University and its components, including the Medill School of Journalism; or (3) the Center of Journalism Excellence.  Def.'s SOF ¶¶ 37–38.

To fulfill Stevens's requests, the Department surveyed multiple filing systems and offices for relevant materials.[3]  Among other locations, the Department

---

[1]    The following facts are undisputed or have been deemed admitted.

[2]    In 2017, Stevens agreed to modify Requests 3181 and 3575.  *See* Def.'s SOF ¶¶ 21, 38.

[3]    In her declaration, Stevens makes multiple assertions about the Department's search process that are not based on her personal knowledge.  *See, e.g.* Pl.'s Ex. 1, Stevens Decl. ¶¶ 29, 30, 34, ECF No. 64-1.  That violates Federal Rule of Civil Procedure 56(c)(4), which dictates that affidavits "used to support or oppose a motion must be made on

2

examined the State Archiving System, the Records Inventory Management System, Embassies and Consulates in Abu Dhabi, Beijing, Doha, Seoul, Singapore, and Shanghai, along with the Bureaus of Diplomatic Security ("DS"), Near Eastern Affairs ("NEA"), East Asian and Pacific Affairs ("EAPA"), and International Information Programs ("IIP"). Def.'s SOF ¶¶ 7, 22, 39. The Department's affidavit lists the keywords it used to scan each of those locations. Ex. A, Stein Decl. ¶¶ 16–59, Def.'s SOF.

As a result of its efforts, the Department found hundreds of responsive documents. In response to Request 3180, the Department produced 128 records in full, 350 records in part, and withheld 22 other records. Def.'s SOF ¶ 50. As to Request 3575, the Department produced 29 records in full, 2 records in part, and withheld 2 other records. *Id*. ¶ 52. As to Request 3181, the Department produced no records. *Id*. ¶ 51.

Concerned about the adequacy of the Department's search and its decision to withhold certain information, Stevens filed suit. After it completed its document production in this case, the Department moved for summary judgment. *See* Summ. J. Mot., ECF No. 57. In keeping with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), the Department also produced an index describing the withheld documents. *See* Def.'s SOF, *Vaughn* Index. The Department's summary judgment motion is now before the Court.

---

personal knowledge." Accordingly, the Court strikes those assertions and disregards the factual statements they support. *See, e.g.*, Pl.'s SOF, Part I ¶ 49, Part II ¶¶ 9, 10, 12, 14–17, ECF No. 65.

## Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013).

## Analysis

Stevens challenges the Department's response to her FOIA requests on two grounds. First, she insists that the Department failed to conduct an adequate search for the requested materials. Second, she maintains that the Department wrongly withheld certain documents.

## I.    The Adequacy of the Department's Search

FOIA provides that agencies "shall make . . . records promptly available to any person" who submits a request that "(i) reasonably describes such records and

(ii) is made in accordance with [the agency's] published rules." 5 U.S.C. § 552(a)(3)(A). To establish that a search was adequate, an agency must show: (1) "that it made a good faith effort to conduct a search for the requested records" and (2) that it used "methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

At the summary judgment stage, "the question [under FOIA] . . . is not whether the agency *might* have additional, unidentified responsive documents in its possession." *Rubman v. U.S. Citizenship & Immigration Servs.*, 800 F.3d 381, 387 (7th Cir. 2015). "Rather, the court need only determine whether the search itself was performed reasonably and in good faith." *Id.* And, under FOIA, good faith is presumed, subject to rebuttal. *See Henson v. Dep't of Health & Human Servs.*, 892 F.3d 868, 875 (7th Cir. 2018) ("Good faith is presumed.").

## A.    Good Faith

Although Stevens devotes most of her firepower to challenging the reasonableness of the Department's search, she briefly argues that the Department did not act in good faith. Specifically, Stevens faults the Department for failing to "follow-up on any known leads." Def.'s Resp. at 9, ECF No. 64 (citing *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998) ("An agency . . . [must] account for leads that emerge during its inquiry.") (quotation marks omitted). The primary lead that Stevens identifies is an email from the Dean of Northwestern's Qatar campus to the then-Ambassador to Qatar. Because that email refers to a

prior meeting between the Dean and the Ambassador, Stevens Decl. ¶ 31, Stevens submits that the Department should have widened its search to look for information about that meeting, *id*. ¶ 32.

But Stevens has failed to rebut the presumption of good faith. Notably, the Department did perform supplemental searches of the Ambassador's classified and unclassified email. Def.'s Ex. A, Stein Decl. ¶¶ 20–22, ECF No. 59; *see Stevens v. U.S. Dep't of Homeland Sec.*, No. 13 C 03382, 2014 WL 5796429, at *6 (N.D. Ill. Nov. 4, 2014) (finding that "the agency's actions to rectify the failings of the initial search . . . demonstrate [that] an adequate search was performed").

And the Department has gone to great lengths to satisfy Stevens's requests. *See Henson*, 892 F.3d at 875 (observing that the presumption of good faith "can be reinforced by evidence of the agency's attempts to satisfy the request"). Indeed, between 2015 and 2018, the Department scoured over ten distinct filing systems, entered dozens of queries, and produced hundreds of documents. Stein Decl. ¶¶ 13–36. Considering those efforts, the Court finds that the Department carried out the search in good faith.

### B. The Reasonableness of the Search

Stevens's primary objection, though, is to the adequacy of the Department's search. It is well-established that "[t]he adequacy of [an agency]'s search is judged under a reasonableness standard." *Becker v. I.R.S.,* 34 F.3d 398, 406 (7th Cir. 1994). To satisfy that standard, an agency must produce a "detailed affidavit, setting forth the search terms and the type of search performed, and averring that

6

all files likely to contain responsive materials (if such records exist) were searched."
*Oglesby*, 920 F.2d at 68. "[I]f a review of the record raises substantial doubt [about the adequacy of the search], particularly in view of well defined requests and positive indications of overlooked materials, summary judgment is inappropriate." *Rubman*, 800 F.3d at 387 (citation omitted). Attacking the reasonableness of the search, Stevens contends that the Department refused to scrutinize relevant locations and failed to use appropriate keywords in the queries it did perform.

### 1.    The Locations Searched

According to Stevens, the Department did not look everywhere it should have. Her primary argument concerns Request 3180, which sought records "referencing Northwestern University's Qatar campus." Stein Decl. ¶ 5. The Department should have scanned the emails of all of the employees at the U.S. Embassy in Qatar, Stevens says, rather than conducting a "piecem[eal] search of select email holder." *See* Pl.'s Resp. at 8. But that significantly understates the Department's efforts. In fact, the Department investigated the "unclassified and classified email records of employees in the Public Affairs Section, Economic Section, and Political Section" of the U.S. Embassy in Qatar. Stein Decl. ¶ 21. If Stevens believes that the Department should have reviewed emails sent by employees in other sections, she does not identify them.

More broadly, Stevens posits that the Department should have investigated a half dozen other locations, such as "the Bureau of Political-Military Affairs," the emails of "prior and subsequent ambassadors", and the personal emails and text

messages of "employees of the various embassies." Pl.'s Resp. at 8–9. The problem is that Stevens fails to "articulate[] specific reasons why additional documents would have turned up" if the Department had scanned the locations she puts forward. *See Stevens v. U.S. Immigration & Customs Enforcement*, No. 17 C 2853, 2020 WL 108436, at *6 (N.D. Ill. Jan. 9, 2020).

By contrast, the Department has produced a detailed affidavit attesting that it "conducted a thorough search of all . . . locations that were reasonably likely to contain records responsive to Plaintiff's FOIA request." Stein. Decl. ¶ 89. Such affidavits "cannot be rebutted by purely speculative claims about the existence or discoverability of documents." *See SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). Even *Maydak v. U.S. Dep't of Justice*, the case upon which Stevens relies, is consistent with that principle. 362 F. Supp. 2d 316, 326 (D.D.C. 2005), *order vacated in part*, No. CV 00-0562(RBW), 2008 WL 11497858, *1 (D.D.C. Dec. 3, 2008). In *Maydak*, the court denied an agency's motion for summary judgment partly because "no one avers . . . that all files likely to contain responsive records were searched." *Id*. This case is different because the Department has provided an affidavit by a knowledgeable person stating that the Department has scrutinized all such locations. *See* Stein Decl. ¶ 89; *see also* Def.'s SOF ¶ 49.

In short, Stevens's speculation that responsive records may be found in other locations is not enough to undermine the adequacy of the Department's search.

### 2.    The Search Terms Used

Continuing her focus on Request 3180, Stevens objects to the keywords the Department used to locate records about Northwestern's Qatar campus.   As a threshold matter, the parties disagree about the import of a keyword search agreement that they entered in September 2017.   According to a status report filed at the time, "[t]he parties . . . agreed to [refine the] searches using certain keywords, to reduce the number of documents the Department must review."   9/29/2017 Status Report, ECF No. 18.  "If Stevens is ultimately unsatisfied with the resulting production," the status report continued, "the parties will revisit the issue."   *Id.* Because the Department used the agreed-upon keywords to narrow the search, but did not perform additional queries, Stevens argues that its search for documents responsive to Request 3180 was inadequate.

But it is Stevens, not the Department, who did not comply with the agreement.   On February 5, 2018, Stevens learned that the Department considered its search complete.  Ex. 7, 2/5/2018 Email, Pl.'s Resp.  Soon after, the Department announced that it was preparing a summary judgment motion and an accompanying *Vaughn* index.  *See, e.g.* 2/27/2018 Minute Entry, ECF No. 25 (setting a briefing schedule).  For the next sixteen months, Stevens said nothing about the keyword search agreement.   In fact, Stevens's June 7, 2019 response to the Department's summary judgment motion was the first time she raised any concerns about that agreement.  Pl.'s Resp. at 6–7.  Seeing no reason for the delay, the Court

concludes that Stevens has waived argument regarding this issue.  *See Ctr. for Biological Diversity v. U.S. Envtl. Prot. Agency*, 369 F. Supp. 3d 1, 13 (D.D.C. 2019) (finding that a "belated challenge to [the agency]'s search terms . . . is far too late" when the plaintiff failed to raise its concerns despite multiple opportunities to do so).

Waiver aside, Stevens's argument fails on the merits.  Pursuant to the terms of the agreement, the Department used twenty-one different keywords—including many with a wildcard term—to narrow its search results.  Although Stevens questions that approach, she does not propose any additional keywords.  Nor does she explain why using additional terms would be essential to a reasonable search.  *See DiBacco v. U.S. Army*, 795 F.3d 178, 191 (D.C. Cir. 2015) (recognizing that an agency "need not knock down every search design advanced by every requester").  For these reasons, the Department's decision not to go beyond the keyword search agreement does not undercut the reasonableness of its efforts.

Arguing in the alternative, Stevens insists that "none of the purportedly agreed upon keywords were ever used."  Pl.'s Resp. at 7, ECF No. 64.  Relatedly, she complains that the Department never used the term "censor*"—one of those keywords—in its search.  *Id*.  Here again, Stevens misunderstands the Department's affidavit.  In fact, the affidavit confirms that the Department employed the agreed keywords, including the term "censor*", in its investigation.  *See* Stein Decl. ¶ 7 n.1; *id*. at 7 n.4 ("During the course of it [sic] processing of this

request, the Department applied [those] keywords to narrow the results of these searches.").

Stevens's final argument rests on firmer ground. Most of the Department's subdivisions used "Northwestern" as their primary search term. *See* Stein Decl. ¶¶ 17, 19, 21, 22, 26, 32, 35. But two of those subdivisions—the Bureaus of Near Eastern Affairs ("NEA") and International Information Programs ("IIP")—looked for "Northwestern University" rather than "Northwestern."[4] Stein Decl. ¶¶ 28–29. Usually, agencies may not search for the formal version of a name without also looking for informal variants. *See, e.g. Bagwell v. U.S. Dep't of Justice*, 311 F. Supp. 3d 223, 229–30 (D.D.C. 2018) (declaring that an agency's search for "Pennsylvania State University" was unreasonable "because it would not pick up documents that contained only 'PSU' or 'Penn State.'").

*Stevens v. U.S. Dep't of State*, a FOIA action that involved the same parties as this one, is instructive. No. 13 C 5152, 2015 WL 1744131 (N.D. Ill. Apr. 14, 2015). There, the Department looked for "Mark Lyttle" but not "Lyttle." *Id.* at *3. In classifying that query as unreasonable, the court found it significant that "the State Department searched for the term 'Lyttle' in other databases in other locations." *Id.* "The very fact that defendant used 'Lyttle' as a search term in other databases," the court continued, "shows that it is a term reasonably calculated to uncover relevant documents." *Id.*

---

[4]     Stevens's brief confuses the Bureau of Near Eastern Affairs, which searched for "Northwestern University," with the Bureau of Diplomatic Security, which searched for "Northwestern." *See* Stein Decl. ¶¶ 23–30.

For similar reasons, the Court cannot say that the NEA's and IIP's searches were reasonably calculated to uncover responsive records. Tellingly, every other subdivision used "Northwestern," rather than "Northwestern University," as their primary search term. And, while it is conceivable "that the way [the NEA and IIP] databases operate makes it unlikely that any document could contain [the term Northwestern] without [the term University]," the Department does not make that argument. *Id*. at *3–4. As a result, the Court has "substantial doubt" as to the adequacy of the Department's search of the NEA's and IIP's databases. *Rubman*, 800 F.3d at 387.

To sum up, the Court finds that all but two of the Department's subdivisions performed reasonable searches for the requested records. At the same time, the Department has failed to demonstrate the reasonableness of the searches conducted by NEA and IIP regarding Request 3180 for the reasons stated above. Accordingly, the Department's request for summary judgment as to the adequacy of the search is denied as to those two subdivisions, but granted in all other respects. To satisfy the Court's concerns, the NEA and IIP must perform an additional search for "Northwestern," along with any follow-up searches they deem reasonable. *See Campbell*, 164 F.3d at 28 (reminding agencies to "revise [their] assessment of what is reasonable . . . to account for leads that emerge") (quotation marks omitted). Within ninety days, the Department should provide Stevens with either: (1)

responsive documents and, if appropriate, a *Vaughn* index, or (2) a letter stating that the supplemental searches uncovered no responsive documents.[5]

## II.  Exemptions

As a general matter, FOIA "contemplates a policy of broad disclosure of government documents." *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1037 (7th Cir. 1998).  That said, "Congress has structured various exemptions from the FOIA's disclosure requirements in order to protect certain interests in privacy and confidentiality." *Id.*  "In view of the mandate for broad disclosure," the Seventh Circuit has cautioned, "those exemptions are to be construed narrowly." *Enviro Tech. Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 374 (7th Cir. 2004).  For the same reason, the "[g]overnment bears the burden of justifying its decision to withhold the requested information pursuant to a FOIA exemption." *Solar*, 142 F.3d at 1037 (citing *Patterson v. IRS*, 56 F.3d 832, 836 (7th Cir. 1995)).  Here, Stevens faults the Department for withholding information under Exemptions 1, 3, 4, 5, and 6.

### A.    Exemption 1 (National Security)

The first exemption dictates that agencies need not disclose information that is: "(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." *See* 5 U.S.C. § 552(b)(1).  When interpreting Exemption 1, courts "have consistently deferred to executive

---

[5]    The Court believes that 90 days is necessary in light of the current public health emergency caused by the novel coronavirus, COVID-19.  If the Department discovers that it needs additional time, it should file a motion with the Court.

affidavits predicting harm to national security, and have found it unwise to undertake searching judicial review." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003). Still, the government must provide enough information for the reviewing court to "draw [some] connection between the documents at issue and the general standards that govern the national security exemption." *Campbell*, 164 F.3d at 31.

At the outset, Stevens questions the Department's reliance on Executive Order 13,526, which empowers agencies to classify records that relate to "foreign government information," "intelligence activities," and "foreign relations." *See* Classified National Security Information, 75 Fed. Reg. 707, 709 (Dec. 29, 2009). In Stevens's view, that Executive Order is "circular, vague, unduly broad, and in contravention of FOIA's language and stated purpose." Pl.'s Resp. at 10. Yet Stevens offers no authority to justify that position. And courts routinely uphold agency decisions to withhold documents classified under Executive Order 13,526. *See e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 943 (D.C. Cir. 2013); *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 640 F. App'x 9, 12 (D.C. Cir. 2016). Thus, Stevens's blanket objection to any information withheld pursuant to that Order misses the mark.

Next, Stevens portrays the Department's *Vaughn* index as "boilerplate" that does not justify the invocation of Exemption 1. Pl.'s Resp. at 10. It is true that many of the Department's explanations use similar language. But that is the wrong question. *See Larson v. Dep't of State*, 565 F.3d 857, 868 (D.C. Cir. 2009) ("[W]hen

the potential harm to national security . . . is the same, it makes sense that the agency's stated reasons for nondisclosure will be the same."). The right question is whether the Department's explanations "appear[ ] logical or plausible." *Judicial Watch*, 715 F.3d at 941; *see Morley v. C.I.A.*, 508 F.3d 1108, 1124 (D.C. Cir. 2007) ("Exemption 1 . . . suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified."). With that standard in mind, the Court examines each record that Stevens says should have been disclosed.

### 1.     Document 27

This classified cable describes "the effects of education in Qatar." *Vaughn* Index ¶ 27. Because the cable pertains to "sensitive national security topics," the Department predicts that disclosure "could . . . cause serious damage to . . . our relationships with countries whose cooperation is important to U.S. national security." *Id.* Mindful of the "substantial weight" accorded to agency affidavits in this context, the Court finds it plausible that an informant provided the Department with sensitive information about the impact of education on Qatari citizens. *Morley*, 508 F.3d at 1124. Thus, the Department has adequately supported its decision to withhold this document.

### 2.     Document 28

This cable "report[s] on discussions between the U.S. Ambassador to Qatar and a Qatari government official." *Vaughn* Index ¶ 28. "Release of th[is] foreign government information," the Department warns, could discourage foreign leaders

from "furnish[ing] information important to the conduct of U.S. foreign relations." *Id*. Considering the high-level officials involved, the Court is persuaded that divulging the content of their conversations could plausibly harm national security. And, contrary to Stevens's suggestion, that the Department reclassified Document 28 during this litigation does not cast doubt on this justification. *See Goldberg v. U.S. Dep't of State*, 818 F.2d 71, 80–81 (D.C. Cir. 1987) ("FOIA [does not] impose any additional requirements on agencies when they reclassify documents."). Thus, the Department has adequately supported its decision to withhold this document.

### 3.    Document 34

This cable is titled "Qatar: Ousted Media Freedom Advocate Questions Qatari Commitment to Reform." *Vaughn* Index ¶ 34. The Department explains that this document features "discussions of sensitive national security topics involving U.S. interests in Qatar." *Id*. Disregarding this rationale, Stevens submits that "the document pertains to generally publicized information." Pl.'s Resp. at 11. But nothing in her briefing or factual statement supports that assertion. Besides, even if the "Media Freedom Advocate" spoke publicly, it is still plausible that the Department's analysis of a statement criticizing another government would be sensitive. Thus, the Department has adequately supported its decision to withhold portions of this document.

### 4.    Documents 29, 30, 33, 34, 35, 36, and 38

These documents feature Department-created "scenescetters" designed to prepare American officials for visits to Qatar. *See, e.g., Vaughn* Index ¶ 36

("Scenesetter for DHS Secretary Michael Chertoff's May 2008 Visit to Qatar"). "This material reflects information about the nature of U.S. engagement with other countries and evaluations by U.S. officials regarding those engagements," the Department says. *Id*. Because it is plausible that briefing materials intended for relatively high-level officials would contain some sensitive information, the Department has adequately supported its decision to withhold portions of these records.

### 5. The DIA Intelligence Report

According to the Defense Intelligence Agency ("DIA"), this document "is an intelligence report classified at the secret level." *See* Ex. B, *Williams* Decl. ¶¶ 10–12, Def.'s SOF. Among other dangers, disclosure of the report "would reveal classified source[s] and method[s]." *Id*. ¶ 12. "In particular," the DIA adds, "disclosure of the information continued in this record would provide adversaries sufficient information about specific intelligence collection techniques used by the United States that adversaries could then use to develop countermeasures." *Id*. That publishing a classified report would expose intelligence gathering techniques is sufficiently logical to defeat Stevens's challenge to the DIA's decision to withhold this document. *See, e.g.*, *Nat'l Sec. Counselors v. C.I.A.*, 960 F. Supp. 2d 101, 166 (D.D.C. 2013) ("Although many details . . . remain unknown, the DIA's declaration plausibly establishes that the withheld information relates to sensitive operations within the Intelligence Community. That is sufficient to grant summary judgment.").

As a last resort, Stevens urges the Court to compel *in camera* review of the documents discussed above. "In the absence of any indicia of bad faith," however, a plaintiff's "speculation about the withheld documents is insufficient to justify *in camera* review." *Canning v. United States Dep't of State*, 134 F. Supp. 3d 490, 502 (D.D.C. 2015). And again, Stevens has failed to articulate any compelling reasons to distrust the Department's representations regarding Exemption 1. The Court thus declines to require *in camera* review.

## B.     Exemption 3 (Information Exempted by Another Statute)

Under this exemption, "FOIA does not apply to matters that are specifically exempted from disclosure by [other] statute[s]." *Bassiouni v. C.I.A.*, No. 02 C 4049, 2004 WL 1125919, at *4 (N.D. Ill. Mar. 31, 2004) (citing 5 U.S.C. § 522(b)(3)). As relevant here, 8 U.S.C. § 1202(f) directs the Department to treat records "pertaining to the issuance or refusal of visas" as confidential. In keeping with that statutory obligation, the Department withheld Document 61, an email titled "Hon. Dana Shell Smith – Help with U.S. Visa." *Vaughn* Index ¶ 61.

Challenging that decision, Stevens speculates that the redacted information may relate to a prospective rather than an actual applicant. But the relevant *Vaughn* entry, which clarifies that "[t]he Department withheld information regarding the identity of a visa applicant," forecloses that possibility. *Id.* Equally unavailing is Stevens's argument that the Department waived Exemption 3 by disclosing information about the applicant. The Department avers that a visa applicant sent an email to the Ambassador Smith, not that the Ambassador

disclosed any protected information in response. *See Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 742 n.30 (D.C. Cir. 1983) (recognizing that "[a]n *unauthorized* disclosure of documents does not . . . constitute a waiver of the applicable FOIA exemption") (emphasis added). Thus, the Department has justified its decision to withhold portions of Document 61.

### C.    Exemption 4 (Confidential Information)

FOIA's fourth exemption provides that agencies need not disclose "commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4). Just last year, the Supreme Court elaborated on the scope of this exemption.[6] *See Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356 (2019). "[W]here commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy," the Court held, "the information is 'confidential' within the meaning of Exemption 4." *Id.* at 2366.

Applying that standard, the Court concludes that Madigan's course materials fall within Exemption 4. The critical fact is that the challenged documents "[are] not shared by Ms. Madigan beyond her students." *Vaughn* Index ¶¶ 11–13. Put

---

[6]    Stevens filed her response about two weeks before the Supreme Court released its decision in *Food Marketing*. *See* Pl.'s Resp. In its reply, the Department called attention to that case. *See* Def.'s Reply at 13–14. Still, Stevens failed to ask for leave to file a sur-reply to address *Food Marketing*. Thus, she has waived her opportunity to do so. Setting aside waiver, pre-*Food Marketing* case law supports the same outcome. *See Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 879 (D.C. 1992) ("[C]ommercial information provided to the Government on a voluntary basis is 'confidential' for the purpose of Exemption 4 if it is of a kind that would customarily not be released to the public by the person from whom it was obtained.").

differently, although Madigan distributes those documents to paying students, she does not make them available to the public. Because those course materials "would customarily not be released to the public by the person from whom [they were] obtained," Exemption 3 permits the Department to withhold them. *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, No. CV 18-2901 (BAH), 2019 WL 7372663, at *11–12 (D.D.C. Dec. 31, 2019) (citation omitted).

### D.    Exemption 5 (Deliberative Process Privilege)

According to Exemption 5, an agency may withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Among other functions, this exemption shields "documents reflecting the deliberative or policy-making processes of governmental agencies." *Enviro Tech*, 371 F.3d at 374–75. To qualify, a record must be "predecisional in the sense that it is actually antecedent to the adoption of an agency policy" and "deliberative in the sense that it is actually related to the process by which policies are formulated." *Id.* at 375 (citations and quotation marks omitted).

Stevens challenges twenty-three documents that the Department withheld under Exemption 5. *See* Pl.'s Resp. at 15. Her primary objection is that those documents do not pertain to "official agency policy" or "agency adjudication." Pl.'s Resp. at 16. But the deliberative process privilege is not limited to official policies and adjudications. Instead, it extends to "documents . . . comprising part of a process by which governmental decisions and policies are formulated." *See Dep't of*

*Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (citation omitted).  In keeping with that principle, "agency deliberations about how to respond to media inquiries," "suggested talking points," and "determinations about how to respond to . . . public interest groups [and] members of Congress," fall within Exemption 5.  *Bloche v. Dep't of Def.*, 370 F. Supp. 3d 40, 51–52 (D.D.C. 2019) (collecting cases).

Measured against that standard, the Department has established that it properly invoked Exemption 5.  Contrary to Stevens's suggestion, many of the challenged records do relate to official policy decisions.  Documents 20 through 26, for instance, feature "back and forth discussion . . . regarding the research and drafting of the text of the P[ublic] D[iplomacy] C[ountry] C[ontext]," a strategic planning exercise.  *Vaughn* Index ¶¶ 20–26.  And the other documents reflect the sort of informal policy deliberations that also implicate the deliberative process privilege.  For example, six documents reflect preliminary discussions about how American officials should interact with foreign audiences and the media.  *Vaughn* Index ¶¶ 29, 30, 35, 41, 53, 67.

In a parting shot, Stevens warns that "Defendant's use of Exemption 5 would shield each and every substantive letter . . . shared between government employees."  Pl.'s Resp. at 16.  Not so.  Only information that relates to a decision, that predates that decision, and that comprises opinions (rather than factual material), falls within the privilege.  *See Enviro Tech.*, 371 F.3d at 375 (noting that the privilege "typically does not justify the withholding of purely factual material").

And the fact that the Department has produced hundreds of records shows that the privilege is not all-encompassing. The upshot is that the Department has appropriately justified its invocation of Exemption 5.

### E.    Exemption 6 (Privacy)

This exemption specifies that a department may hold back "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy." 5 U.S.C. § 552(b)(6). To decide whether disclosure is "clearly unwarranted," courts balance "the individual's right of privacy against the preservation of the basic purpose of [FOIA] to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose,* 425 U.S. 352, 372 (U.S. 1976).

Although Stevens takes issue with the Department's reliance on Exemption 6, she fails to highlight any records that she believes should have been disclosed. Instead, she cites the principle that "employees generally have no expectation of privacy regarding their names, titles, grades [and] salaries." *See Core v. U.S. Postal Serv.*, 730 F.2d 946, 948 (4th Cir. 1984). Without more, however, the Court cannot tell which records Stevens believes were improperly withheld. Thus, Stevens has waived argument as to this exemption. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("[U]ndeveloped arguments are waived.").

Ultimately, having reviewed the *Vaughn* index and accompanying DIA declaration, the Court is convinced that the Department has adequately supported its invocation of Exemptions 1, 3, 4, 5, and 6. As a result, the Court grants the

Department's motion for summary judgment as it relates to the withheld documents.

## <u>Conclusion</u>

For the reasons set forth herein, the Department's motion for summary judgment is granted in part and denied in part. As explained above, the Department is directed to perform supplemental searches of the NEA's and IIP's databases and to provide Stevens and the Court with a letter detailing the results of those searches by June 22, 2020. To address any remaining issues regarding these supplemental searches, the Court sets a status hearing for 7/1/20 at 9:00 a.m.

**IT IS SO ORDERED.**                    **ENTERED   3/23/20**

                                        _____
                                        **John Z. Lee**
                                        **United States District Judge**